## RUDQUIST v. BELLEMORAL, Inc. et al.

### No. 1957.

United States District Court
W. D. Washington, N. D.

July 22, 1948.

Hile, Hoof & Shucklin and Irving Clark, Jr., all of Seattle, Wash., for plaintiff.

Meier & Murray, of Seattle, Wash., for defendants.

C. E. Knowlton, Jr., and Clinton J. Crandall, both of Seattle, Wash., amici curiae.

BLACK, District Judge.

The plaintiff in this action, occupying apartment #206 in the Bellemoral Apartments, Seattle, as a month-to-month tenant, by her amended complaint seeks a declaratory judgment under 28 U.S.C.A. §§ 2201, 2202, to the effect that the efforts of defendants above-named to evict her are unlawful and also for an injunction restraining the defendants from making further efforts to evict plaintiff except by means prescribed in the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq. The defendants in May, 1948 answered plaintiff's amended complaint dated April 1, 1948, the original complaint having been filed and served about the middle of March of 1948. Thereafter, and about June first of this year, the parties entered into an agreed statement of facts, which agreed facts were thereafter supplemented by further agreements between the parties and further admissions by defendants through their counsel in open court. After the submission of such agreed facts and oral argument the parties filed written briefs, and at the invitation of the court attorneys C. E. Knowlton, Jr., and Clinton J. Crandall as amici curiae served and filed brief and citations. During the pendency of the action and before its presentation to the court the Housing and Rent Act of 1947 was amended by

the "Housing and Rent Act of 1948," effective in April of this year.

Such Housing and Rent Act of 1947 as amended by the Housing and Rent Act of 1948 provides, in part, as follows:

"No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless * * *

"(2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations, or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family, * * * Provided, That in the case of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association no action or proceeding under this paragraph or paragraph (3) to recover possession of any such housing accommodations shall be maintained unless stock in the cooperative corporation or association has been purchased by persons who are then stockholder tenants in occupancy of at least 65 per centum of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises; but this proviso shall not apply where such corporation or association acquires or leases such structure or premises after the effective date of the Housing and Rent Act of 1948 pursuant to a contract entered into prior to such date;

"(3) the landlord has in good faith contracted in writing to sell the housing accommodations to a purchaser for the immediate and personal use and occupancy as housing accommodations by such purchaser".

It is agreed that Mrs. H. Gangmark is the owner of the Bellemoral Apartment premises, including the apartment rented by plaintiff, and that prior to the effective date of the Housing and Rent Act of 1948 she entered into an executory contract with Bellemoral Incorporated, a corporation, for the subsequent purchase of the apartments at an agreed purchase price of about $85,000.00. It is further agreed that some time prior to February 9, 1948 the plaintiff was offered the opportunity to purchase a membership and a proprietary lease to her apartment by the Merry Investment Company, representing the Bellemoral Incorporated, and that when she refused to purchase the same her said apartment unit was offered for sale on the open market and that the defendant, Oscar Peterson, made an earnest money payment upon an agreement for the purchase of a membership in the defendant, Bellemoral Incorporated, and for the delivery to him when he should complete such purchase of a ninety-nine year proprietary lease to such apartment occupied by plaintiff.

Under date of February 9, 1948 all of the defendants joined in a notice to quit and surrender the premises addressed to plaintiff, requiring her to quit the premises on February 29, 1948 and surrender and deliver same to the above-named Merry Investment Company. Included in such notice was the statement "that the owners of said property have in good faith contracted in writing to sell subject property to Mr. Oscar Peterson for his (their) immediate and personal use and occupancy as housing accommodations for him (them)."

From the exhibits introduced it appears that said Oscar Peterson is a bachelor and that he has paid $403.00 as earnest money and has paid no more upon an agreed total purchase price of $4,103.00 payable $1,500.00 in cash at time of closing and the balance in installments of not less than $22.81 per month with 5% interest from March 31. In such earnest money receipt the following is found:

"The property is to be conveyed by the issuance of a certificate of membership in Bellemoral Incorporated and the execution of a proprietary lease for a term of 99 years in the form used by said corporation. The lease is to be subject to all encum-

brances placed on the above described real property to finance purchase thereof by seller.

"It is understood that purchaser is buying a membership in a mutual housing project and by virtue thereof will secure a 99-year proprietary lease of the above mentioned apartment unit. Of necessity the financing of this project depends upon the sale of all apartment units in the apartment building.'

"Under these circumstances it is agreed that in the event that substantially all of the apartment units are not sold on or before June 1st 1948 this agreement, at the option of either party, may be cancelled and terminated without liability to either party."

Such earnest money receipt was issued by the Merry Investment Company and signed in behalf of such investment company and by the said Oscar Peterson.

It further appears that to date Mrs. H. Gangmark is the owner of said premises, that the title is in her, that the Bellemoral Incorporated has not as yet completed the proposed purchase nor acquired or leased said premises and further that neither Oscar Peterson nor any other person has obtained other than an earnest money receipt nor has made more than an earnest money down payment.

It further appears that none of the tenants in occupancy entered into such earnest money transactions but that probably about fifteen out of nineteen units are covered by earnest money receipts to other persons.

Bellemoral Incorporated is not yet entitled to any conveyance but it plans in the future to in cash pay about 50% of the agreed purchase price pursuant to the executory contract, which cash is to come through some financing program from a life insurance company, and plans to pay the remaining balance of the purchase price from those holding earnest money receipts if they pay the balance except that if the total received from the insurance company and these potential stock purchasers does not equal 100% of the purchase price that probably Mrs. Gangmark would accept a second mortgage for the balance.

It is clear that under the terms of the earnest money receipt issued to Oscar Peterson that on and after June 1, 1948 any agreement to which he was a party became merely an option on the part of either potential seller or potential purchaser.

Certainly the landlord, Mrs. H. Gangmark, did not contract in writing to sell the accommodations to Oscar Peterson for his immediate and personal use and occupancy as housing accommodations.

Therefore, so far as subsection (3) of § 209(a) is concerned the defendants have no right to evict the plaintiff.

It is vigorously contended by the defendants that the Housing and Rent Act amendment of 1948 under § 209(a) (2) gives the defendant the right to evict plaintiff. Their argument is that the corporation acquired the premises after the effective date of the Housing and Rent Act of 1948, pursuant to a contract entered into prior to such date and that therefore it is not controlled by the requirement of at least 65 per centum of the dwelling units in the structure being stockholder tenants in occupancy before an eviction can be had.

It must be noted that § 209(a) (2) of the amended 1948 Act does not affirmatively give a cooperative corporation or association any express right to evict anyone. The language is merely negative to the effect that a cooperative corporation or association may not compel eviction unless 65 per centum of the dwelling units in the structure are then occupied by stockholder tenants entitled by reason of stock ownership to proprietary leases.

Without finally determining the question, it may reasonably be assumed that a fair implication of such amendment of 1948 is that while Congress overlooked so saying that it did intend that such cooperative corporation or association having such 65% or more of members as tenants in occupancy could recover possession in behalf of non-occupant members of the 35% or less of the premises which might be occupied by non-member tenants.

Any such implication as to eviction by such cooperative with at least 65% occupant members is in no wise helpful to defendants because it is agreed that the

alleged cooperative defendant has no such percentage, or in fact any percentage, of occupant members.

Defendants, therefore, must depend entirely upon this language: "* * * this proviso shall not apply where such corporation or association acquires or leases such structure or premises after the effective date of the Housing and Rent Act of 1948 pursuant to a contract entered into prior to such date".

That language applied to the previous negative proviso is far from clear and is capable of quite contradictory interpretations. For instance, it may well be that such language cancels any affirmative implication from the preceding negative provision.

Aside from that in any event a corporation which entered into a contract prior to the effective date of the 1948 Housing and Rent amendment must after the amendment became effective acquire or lease the structure or premises. But in this instance neither the said alleged cooperative corporation nor the said Oscar Peterson has yet acquired or leased the structure or premises, or any part thereof.

Actually Bellemoral Incorporated is not a cooperative but is merely a corporation which its incorporators hope they can sometime make into a cooperative by sale of stock interests to persons desiring apartments already occupied by tenants who do not wish to be compelled to purchase an apartment for the privilege of having a place to live.

There has been no acquisition and no lease, and there is no cooperative, and neither stockholder tenants nor even present stockholders who expect to be tenants. The option holders perhaps may in the future become stockholders. At most Oscar Peterson has an option, which either he or the vendor may terminate, for the future purchase of stock if he desires to complete such and in the event purchasers are found for the other eighteen units of stock and that they likewise should complete the purchases.

That the parties themselves must not have considered the earnest money receipt or even the subsequent purchase as the sale of interest in real property is apparent from the following provision in the earnest money receipt: "Balance to be evidenced by a promissory note, to be secured by a chattel mortgage on said membership and lease."

If the potential seller and the investment agent had contemplated that such membership and lease would constitute an actual interest in real property it is difficult to believe they would have been satisfied merely with a chattel mortgage.

There have been no decisions presented to me interpreting the 1948 Housing and Rent amendment. This is understandable in view of the short period it has been in effect.

Aside from the question as to whether or not the notice to vacate was itself in compliance with law it appears that the defendants under no reasonable interpretation of the 1948 Housing and Rent Act have authority to evict plaintiff.

The fact that such mimeographed earnest money receipt has blanks for the name of the proposed cooperative would indicate that Merry Investment Company has a considerable number of similar potential cooperative prospects in contemplation.

The attempt of the defendants to evict plaintiff is clearly contrary to the letter and the purpose of the Housing and Rent Act. Certainly the Bellemoral Incorporated is not within the spirit or intent of the Act a cooperative. At most it is a hope that in the future it may become a cooperative.

While not necessary of decision here it may be said that I am inclined to the opinion that defendants would not be entitled to prevail even if Bellemoral Incorporated since the 1948 amendment became effective had actually acquired the title to the premises by a completed purchase and even if Oscar Peterson had also paid in full for the unit. Even then it would have no substantial number of nor even any occupant members and therfore I am inclined to believe would not be a true cooperative within any reasonable implication of the Housing and Rent Act now effective.

Plaintiff is therefore entitled to judgment declaring her right to continue her

180

tenancy and enjoining defendants from evicting her except by the means prescribed in the said Housing and Rent Act of 1947 as amended by the Housing and Rent Act of 1948.